**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KELVIN OSWALDO TRUJILLO-HERNANDEZ, Petitioner, v. MARKWAYNE MULLIN, et al., Respondents. | Case No. 5:26-cv-03282-SP **MEMORANDUM OPINION AND ORDER GRANTING PETITION** |

## I. INTRODUCTION

On June 13, 2026, petitioner Kelvin Oswaldo Trujillo-Hernandez, a federal immigration detainee, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition" or "Pet.") supported by the declaration of attorney Cesar O. Montoya and exhibits. Docket no. 1. Petitioner is being held at the U.S. Immigration and Customs Enforcement ("ICE") Desert View Facility in Adelanto, California. Petitioner contends his detention violated his right to procedural due process under the Fifth Amendment. Petitioner seeks immediate release from immigration custody, as well as declaratory and other injunctive relief.

On June 18, 2026, respondents filed an Answer. Docket no. 7. Petitioner filed a Reply on June 22, 2026. Docket no. 8. Respondents filed a corrected Answer on June 29, 2026, and petitioner filed a Reply to the corrected Answer on July 1, 2026, which simply incorporated by reference the arguments made in the previously filed Reply. Docket nos. 10-11.

For the reasons discussed below, petitioner's procedural due process claim merits habeas relief. The court therefore grants the Petition and issues a writ of habeas corpus requiring petitioner's immediate release from immigration custody along with other relief.

## II.

## BACKGROUND

Petitioner is a native and citizen of Nicaragua. Pet. ¶¶ 14, 27.[1] Petitioner entered the United States on or May 8, 2022, and presented himself to immigration officials. *Id.* ¶ 27. Petitioner was released from custody pursuant to a grant of humanitarian parole. *Id.* ¶ 28.

After his release from custody, petitioner resided in the United States with his family and applied for asylum. *Id.* ¶¶ 29, 32. Petitioner has complied with the conditions of his parole, including all reporting requirements. *Id.* ¶ 29. Petitioner has no criminal history. *Id.* ¶ 31.

On or about April 26, 2026, petitioner appeared at an ICE check-in, where ICE officers detained him. *Id.* ¶ 30. Petitioner was neither provided prior notice of his re-detention nor an individualized bond hearing. *Id.* ¶ 77.

---

[1] The Petition is signed only by petitioner's counsel and it is not verified by petitioner. The court accepts the facts alleged in the Petition: (1) for the purposes of Part II of this opinion if uncontested; (2) if supported by documents submitted by petitioner as part of the Petition; or (3) if the information could be within counsel's personal knowledge.

Petitioner filed an earlier habeas petition and motion for temporary restraining order in a different case, No. 5:26-cv-02452, on May 8, 2026. That petition alleged essentially no facts other than the fact of his detention. Pet. ¶ 33; *see id.*, Ex. D. Petitioner was granted a bond hearing, which was held on May 19, 2026 without notice or counsel. *Id.* ¶ 35. The immigration judge denied bond. *Id.* The court then denied the petition on the ground that the post-deprivation hearing decision did not constitute an abuse of discretion. *See id.*, Ex. H.

## III.

## DISCUSSION

Petitioner effectively raises one claim for relief, that his re-detention without notice and a pre-detention hearing violated his Fifth Amendment right to procedural due process. *Id.* ¶ 49 and at 35-37. Respondents assert the Petition is moot because petitioner received a post-deprivation hearing, the court lacks jurisdiction to review petitioner's claim, and petitioner must exhaust his remedies. *See* Answer at 5-10.

### A. This Court Has Jurisdiction Over the Claim in the Petition

A federal district court may issue a writ of habeas corpus when a petitioner demonstrates he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and [] the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Here, petitioner argues he should be released from respondents' custody because his detention violates the Due Process Clause of the Fifth Amendment. *See* Pet. at 35-37. He has therefore properly invoked this court's habeas jurisdiction.

The INA contains several provisions that limit judicial review of immigration-related matters, including most notably 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g). While § 1252(g) strips the court of jurisdiction to hear any claim "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders," the Supreme Court has clarified that the language of

§ 1252(g) does not "sweep in any claim that can technically be said to 'arise from' the three listed actions," but instead refers "to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (citation omitted). The applicability of § 1252(b)(9), which works in conjunction with § 1252(a)(5) to channel certain immigration-related matters to the Courts of Appeals, has been limited in similar fashion. *See Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020) (citation omitted); *see also Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 810-11 (9th Cir. 2020) ("Section 1252(b)(9) is also not a bar to jurisdiction . . . because claims challenging the legality of detention . . . are independent of the removal process.") (citations omitted). Because petitioner is challenging his detention rather than any of the three actions listed above, 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g) do not strip this court of jurisdiction.[2]

**B. <u>Petitioner's Detention Without Adequate Procedural Protections Violated Due Process</u>**

The Due Process Clause of the Fifth Amendment prohibits the government from depriving an individual of liberty without due process of law. U.S. Const. amend. V. "Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Federal courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State . . . ; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454,

[2] Respondents also argue the court lacks jurisdiction to review the immigration judge's May 19 bond denial. The court need not address this argument because it does not read the Petition to ask for such review. The court does not address respondents' argument that petitioner failed to exhaust administrative remedies with respect to the bond determination for the same reason.

460 (1989) (citations omitted); *see also Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022) (applying the two-step inquiry).

**1. Petitioner Has a Protected Liberty Interest**

The first step asks whether respondents have interfered with petitioner's protected liberty interest. Petitioner argues he has a liberty interest in his release from immigration custody. *See* Pet. ¶¶ 6-7, 45, 58-59.

Conditional release from custody may give rise to a protected liberty interest. *Young v. Harper*, 520 U.S. 143, 147-49 (1997). "Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute." *R.D.T.M. v. Wofford*, 2025 WL 2686866, at *4 (E.D. Cal. Sept. 18, 2025) (citing *Young*, 520 U.S. at 147-49); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973); *see Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). "Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release].'" *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citing *Morrissey*, 408 U.S. at 482).

In *Morrissey*, the Supreme Court explained that "[t]he liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime." 408 U.S. at 482. "Subject to the conditions of [their] parole, [a parolee] can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life." *Id.* "[T]he liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others." *Id.*

This was petitioner's situation. Petitioner arrived in the United States in May 2022 and has resided here ever since. Pet. ¶ 27. Petitioner has family in the United States and a pending asylum application. Pet. ¶¶ 29, 32. Petitioner established a life for himself in

the United States while released on parole and therefore has acquired a protected liberty interest in his release from immigration custody. *See e.g., Meneses v. Santacruz*, 811 F. Supp. 3d 1158, 1163 (C.D. Cal. 2025); *Mody v. Warden*, 2026 WL 51976, at *5-6 (C.D. Cal. Jan. 5, 2026); *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) ("petitioner has a liberty interest in his continued release on bond"); *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1046 (E.D. Cal. 2025); *R.D.T.M.*, 2025 WL 2686866, at *4-5; *Esquivel Pacheco v. LaRose*, 2026 WL 242300, at *6 (S.D. Cal. Jan. 29, 2026); *Osmonaliev v. Cantu*, 2025 WL 3637397, at *1 (D. Ariz. Dec. 16, 2025); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321-22 (W.D. Wash. 2025).

**2. Petitioner Was Entitled to a Pre-Deprivation Hearing Prior to Re-Detention Under the Due Process Clause**

"To determine what procedures are constitutionally sufficient to protect a liberty interest, the Court applies the three-part test established in *Mathews v. Eldridge* . . . ." *Pinchi*, 792 F. Supp. 3d at 1033 (citation omitted); *see also Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying the *Mathews* factors in the immigration context). The three factors considered by the court under *Mathews* are:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335 (citation omitted).

The first factor examines petitioner's private interest, here his interest in being free from detention. "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citation omitted); *Hernandez*, 872 F.3d at 993 (holding it "is beyond dispute" that "freedom from

imprisonment is at the 'core of the liberty protected by the Due Process Clause'"). Petitioner has lived in the United States with his family since his arrival. Pet. ¶¶ 29, 32. As such, his personal interest in remaining out of immigration custody is extremely high.

The second factor examines the risk of erroneous deprivation of petitioner's liberty interest, as well as the value of additional procedural safeguards. "The risk of an erroneous deprivation of liberty is high where, as here, petitioner has not received any bond or custody redetermination hearing." *R.D.T.M. v. Wofford*, 2025 WL 2686866, at *6 (E.D. Cal. Sept. 18, 2025) (citation modified). The Supreme Court has made clear that immigration proceedings are civil in nature and must be "nonpunitive in purpose and effect." *Zadvydas*, 533 U.S. at 690. Therefore, immigration detention must be justified by one of two regulatory goals – preventing risk of flight or danger to the community. *Id.* Respondents made such a determination with respect to petitioner when they released him into the United States, concluding he presented neither a risk of flight nor danger to the community. *See* Pet. ¶ 28; 8 C.F.R. § 212.5(b) (requiring that a non-citizen "present neither a security risk nor a risk of absconding" before being granted parole). Petitioner states he complied with all of the requirements of release. Pet. ¶ 29. Respondents do not contest this. Thus, "[g]iven the absence of any procedural safeguards to determine if [petitioner's] detention was justified, the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *R.D.T.M.*, 2025 WL 2686866, at *6 (citation and internal quotation marks omitted); *Mourey v. Bowen*, 2026 WL 467567, at *5 (C.D. Cal. Jan. 31, 2026) (same).

Finally, the third factor examines the government's interest, which here would be its interest in detaining petitioner absent additional process. As other courts have repeatedly recognized, "there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing." *Meneses*, 811 F. Supp. 3d at 1164; *see also R.D.T.M.*, 2025 WL 2686866, at *6 (collecting cases); *Pinchi*, 792 F. Supp. 3d at 1036; *Hasratyan v. Bondi*, 2026 WL 288909, at *4 (C.D. Cal. Feb. 2, 2026); *Yataco v. Warden, Adelanto Det. Facility*, 2025

WL 4065463, at *6 (C.D. Cal. Dec. 26, 2025). The cost of providing a pre-deprivation hearing to petitioner is minimal and custody hearings are routinely conducted by Immigration Courts. *See Singh v. Bowen*, 2025 WL 3251437, at *7 (C.D. Cal. Nov. 21, 2025) (citations omitted); *see also Pinchi*, 792 F. Supp. 3d at 1036. Moreover, because petitioner has already been found not to be a danger to the community or a flight risk by respondents, the government has minimal interest in detaining him at all, absent some showing of changed circumstances. *See Hernandez*, 872 F.3d at 994 ("[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions.").

In sum, given petitioner's strong interest in being free from immigration detention, the high risk of erroneous deprivation of his liberty interest, the high value of additional procedural safeguards, and the lack of government interest in detaining petitioner without additional process, all three of the *Mathews* factors strongly favor petitioner. Therefore, the government's detention of petitioner without adequate process violated petitioner's right to procedural due process under the Fifth Amendment.

But the inquiry does not end here. Petitioner received a bond hearing about one month after his detention. *See* Pet. ¶ 35. Respondents argue this mooted this Petition. Petitioners disagree, contending the proper remedy is nonetheless release from custody because "a post-deprivation bond hearing cannot cure the constitutional injury caused by unlawful detention." *Id.* ¶ 74. The question is whether petitioner's post-deprivation hearing satisfies due process.

"[T]he purpose of habeas remedies is to put the [petitioner] back in the position he would have been in if the [constitutional] violation never occurred." *Lujan v. Garcia*, 734 F.3d 917, 935 (9th Cir. 2013) (citation and quotation marks omitted). The Ninth Circuit has found that a petitioner is only entitled to relief if he can demonstrate prejudice from the due process violation; however, those cases did not concern pre-deprivation and post-deprivation hearings. *See Orellana v. Garland*, 2024 WL 2795192, at *2 (9th Cir.

May 31, 2024) ("Generally, an individual may obtain relief for a due process violation only if she shows that the violation caused her prejudice, meaning the violation potentially affected the outcome of the immigration proceeding.") (cleaned up); *U.S. v. Landeros-Morales*, 840 F. App'x 911, 912 (9th Cir. 2020) (Assuming the immigration judge violated due process, "[petitioner] is not entitled to relief because he cannot demonstrate prejudice."). Indeed, the Supreme Court has found that "[a] claim to a predeprivation hearing as a matter of constitutional right rests on the proposition that full relief cannot be obtained at a postdeprivation hearing." *Mathews*, 424 U.S. at 331.

Accordingly, many district courts in this Circuit "have ordered release even where a belated bond hearing has taken place," *Kumar v. Rios*, 2026 WL 1764923, at *7 (C.D. Cal. June 12, 2026) (listing cases), or taken the position "that any post-deprivation process cannot cure the constitutional violation when the non-citizen was entitled to pre-deprivation notice and hearing." *Andriasyan v. Warden*, 2026 WL 1601905, at *9 (C.D. Cal. June 1, 2026); *see, e.g.*, *Villegas Molina v. Mullin*, 2026 WL 1182194, at *3 (C.D. Cal. Apr. 23, 2026) (noting that the severe delay of post-deprivation bond hearings cannot undo the harms of immigration detention such as the loss of jobs and subpar medical care); *Banol v. Warden*, 2026 WL 776793, at *5 (C.D. Cal. Mar. 19, 2026) ("The availability of a *Rodriguez* bond hearing six months after Petitioner was detained does not adequately address the risk that Petitioner was erroneously detained in the first place."); *Mumaev v. Samaia*, 2026 WL 530765, at *6 (C.D. Cal. Feb. 20, 2026) (a post-deprivation hearing cannot support a petitioner's continued detention when the underlying arrest, revocation of parole, and redetention violated due process); *Medrano-Rocha v. Santacruz*, 817 F. Supp. 3d 871, 882 (C.D. Cal. 2026) ("Providing Petitioner with a post-detention hearing or other procedural remedy will not redress the constitutional violation Petitioner has suffered in being re-detained without a pre-deprivation hearing required by due process."). As one court has found, to accept the argument that there is no due process violation because petitioner had a bond hearing eight months after detention "would in effect vitiate the Fifth Amendment's due process

protections." *Singh v. Janecka*, 2026 U.S. Dist. LEXIS 95798, at *16-*17 (C.D. Cal. Apr. 29, 2026); *see Gonzalez v. Joyce*, 2025 WL 2961626, at *5 (S.D.N.Y. Oct. 19, 2015) ("The suggestion that government agents may sweep up any person they wish without consideration of dangerousness or flight risk, so long as the person will, at some unknown future date, be allowed to ask some other official for his or her release, offends the ordered system of liberty that is the pillar of the Fifth Amendment."). Even courts that have found a post-deprivation hearing may arguably satisfy due process have raised questions of prejudice and adequacy. *See, e.g., Herman v. DHS*, 2026 WL 1723960, at *5 (C.D. Cal. June 12, 2026) (finding petitioner "was likely prejudiced by being forced to litigate a bond hearing while he is detained . . . [as] detention makes it more difficult for noncitizens to access counsel, obtain evidence, and otherwise prepare for a bond hearing"): *Saballos Rosales v. Noem*, 2026 WL 761371, at *3 (C.D. Cal. Mar. 16, 2026) (a deficient post-deprivation hearing is "no substitute" for the pre-detention process).

The question of the appropriate remedy is somewhat close here given that petitioner received a bond hearing within a month of his re-detention. Even so, considering the particular facts and circumstances of this case, the court agrees with petitioner that his belated bond hearing did not remedy the due process violation. Respondents unlawfully denied petitioner a bond hearing when he was initially detained and then continued to deny him a bond hearing until ordered to provide one. The post-deprivation hearing did not displace petitioner's entitlement to pre-deprivation procedures. Under these circumstances, the appropriate remedy is release from custody.

**3. <u>Petitioner Is Entitled to a Pre-Deprivation Bond Hearing Before Any Future Re-Detention</u>**

Typically, "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (citation omitted). In the context of both parole and probation revocations, the nearest analogues to petitioner's situation, the Supreme Court has required pre-deprivation hearings to determine whether an individual's release may be revoked. *See Morrissey*,

408 U.S. at 480-86; *see also Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973). Given petitioner's substantial liberty interest and the high risk of erroneous deprivation of that interest absent such a pre-deprivation hearing, due process requires a pre-deprivation hearing. *See, e.g., Singh*, 2025 WL 3251437, at *8; *R.D.T.M.*, 2025 WL 2686866, at *6 (collecting cases). Indeed, in the immigration parole revocation context, courts have routinely found that individuals should be "afforded a hearing before a neutral decisionmaker prior to any re-arrest or re-detention to determine if the government has demonstrated by clear and convincing evidence that his detention is necessary to prevent danger to the community or flight." *Singh*, 2025 WL 3251437, at *8; *Yataco*, 2025 WL 4065463, at *7; *R.D.T.M.*, 2025 WL 2686866, at *8; *Pinchi*, 792 F. Supp. 3d at 1038; *Padilla v. Bowen*, 2025 WL 3251368, at *10 (C.D. Cal. Nov. 21, 2025).

**IV.**

**<u>ORDER</u>**

IT IS THEREFORE ORDERED that: (1) Judgment will be entered granting the Petition; (2) respondents shall immediately release petitioner Kelvin Oswald Trujillo-Hernandez (A# 240-816-695) from immigration custody; (3) petitioner's conditions of release shall be the same as those in place prior to petitioner's most recent detention; (4) respondents shall return any confiscated property and documents to petitioner upon his release; (5) respondents are enjoined from re-detaining petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation hearing before a neutral decisionmaker, that petitioner presents a flight risk or a danger to the community; and (6) respondents shall file a status report no later than September 24, 2026 regarding their compliance with this Order.

Dated: September 21, 2026

SHERI PYM
United States Magistrate Judge